Mildred P. Lippincott pleaded guilty to a charge of adultery and was sentenced March 21st, 1935, by the judge of the Burlington county special sessions. That sentence ordered and adjudged that she "be imprisoned in the New Jersey State Reformatory for Women at Clinton, upon this conviction." No term or period of imprisonment was specified therein.
Being in custody in that institution upon this commitment, she sued out a writ of habeas corpus directed to the superintendent, and contends that the sentence is for an indefinite term; that the court had no authority to impose a sentence for an indefinite term; that the sentence is therefore illegal and void, and that her detention thereunder is without lawful justification.
By the Crimes act of 1898, — P.L. 1898, c. 235, p. 794, — adultery was made a misdemeanor, (§ 47), and the penalty provided therefor was a fine of not over $1,000 or imprisonment with or without hard labor for not over three years, or both, (§ 218). So the law stood prior to 1918. (It may also be mentioned, — although it seems of no real materiality on the instant issue, — that by the act of 1911, — P.L. 1911, c. 191, p. 356, § 2, — it was provided that every sentence to confinement in State Prison shall specify a maximum and a minimum term.)
In 1918 the legislature enacted the Charities and Corrections act, — P.L. 1918, c. 147, p. 343, — which provides (by section 311 thereof) that any female, over sixteen, convicted of a crime punishable by imprisonment in the State Prison, may be committed to the women's reformatory.
Section 312 of that statute reads as follows, — (omitting the clause and two sentences enclosed in parentheses): —
"312. The several courts in sentencing to the Women's Reformatory shall not fix or limit the duration of sentence, but the time which *Page 345 
any such prisoner (convicted of an offense punishable by imprisonment in the State Prison) shall serve in said reformatory shall not in any case exceed the maximum term provided by law for the offense of which the prisoner shall have been convicted and sentenced. (In the case of a prisoner convicted of an offense punishable either by imprisonment in a penitentiary, workhouse or said Women's Reformatory, said term of imprisonment shall not in such case exceed three years, when sentenced to said reformatory for an indeterminate sentence.) The term of such service may be terminated by the board of managers, in accordance with their rules and regulations. (In all cases in which such women are committed to the Women's Reformatory instead of to a penitentiary or workhouse, for an indeterminate sentence, the inmates shall be maintained therein at a price to be paid by the county from which they were sentenced, as regulated by rule by the State House Commission, for which maintenance in all cases the bills shall be rendered to the county to which such person is chargeable, by the institution and paid to the chief executive officer thereof.)"
The following year that section 312 was amended by P.L. 1919,c. 96, p. 220. The fourth section of that amending act reads as follows: —
"4. Section three hundred and twelve of the act of which this act is an amendment be and the same is hereby amended to read as follows:" — and then follows the paragraph 312 exactly as quoted above (except that the parenthesis marks of course do not appear).
In other words, the change, — and the only change, — made by the amending act, was the inclusion of the clause and two sentences which have been parenthesized above for identification.
By P.L. 1930, c. 256, p. 1088, effective June 30th, 1930, section 4 of the act of 1919 was repealed. It is the contention of the petitioner that as the result of the act of 1919 the original section 312 became merged in the new section 312 prescribed by the act of 1919 and thereafter had no separate existence or identity; that by the repealer of 1930 the original (1918) section 312 was not restored or revived, but the act of 1918 was left without any section 312; hence that there was not, at the time of the sentencing of petitioner, nor at any time subsequent to June 30th, 1930, any statutory (or other) authority for the imposition of any sentence to the Women's Reformatory other than a sentence for some *Page 346 
fixed and definite term in accordance with the provisions of the sections of the Crimes act, hereinbefore mentioned.
On behalf of the state it is contended that the effect of the 1930 repealer of the 1919 amendment was simply to put an end to that amendment and hence to leave section 312 of the 1918 statute in its original form, force and effect.
That this latter contention is correct, this court entertains no doubt. Where a statute completely repealing a prior statute is itself repealed the original act is thereby revived. This was unanimously determined by our highest court in Wallace v.Bradshaw, 54 N.J. Law 175, 23 Atl. Rep. 759, and in that case it was conceded by appellant that this was the rule of the common law, and the sole issue was whether that rule was changed by a provision of our constitution.
If such be the effect of the repeal of a repealing act, it seems a logically necessary result, — at least in the absence of some facts or circumstances creating an exception, — that a similar result must be adjudged in the case of the repeal of an amending act. The original act is thereby restored to its original, unamended state. The greater must needs include the less. Since, in a case where by the second statute the first statute is completely changed, (repealed), the repeal of the second statute completely revives the first, it can no less be true that in a case where by the second statute the first statute is not repealed but only modified in one or two particulars, the repeal of the second statute restores the original form and effect of the first statute, — unless there is something to indicate a contrary legislative intent.
Petitioner relies on the opinion in People v. MontgomeryCounty, 67 N.Y. 109, wherein it is held that a different rule is to be applied in the case of the repeal of an amendatory act, from that which governs in the case of the repeal of a repealer; that in the former case, where the amendatory act amends the original act "so as to read as follows," those portions of the original act retained in the amendatory act became merged in the amendatory act and thereafter the whole force of the enactment rests upon the later statute; that a repeal of "the later and more perfect statute" indicates a radical change of legislative purpose, going to the subject matter of *Page 347 
the legislation rather than an intent simply to repeal the changes made by the later act and to restore the original act to its original form.
That conclusion may well be sound under the particular circumstances and provisions of the statutes there under consideration. It may well be that in a similar case a similar conclusion would be reached by this court; but in the view that such a conclusion is to be adopted as a general rule to be applied in all, or most, cases of repeal of amendatory acts, or that it should be applied in the case here sub judice, this court cannot concur.
Reference to the provisions of section 312 in its original state and in its later amended form, shows that none of the original provisions were eliminated by the amendment nor were they modified from their original form and merged or confused into a different form in the amendment. The amendment retained the original provisions in their original form and simply added two new provisions. Under these circumstances it seems much more reasonable to conclude that the legislative intent in repealing the amendment was simply to delete the two added provisions and restore the section to its original form, rather than that it was intended to abolish completely the entire provisions of the section both those originally enacted and those subsequently added. It would have been a simple and natural thing to have provided for the repeal of section 312 of the act of 1918 as amended by the act of 1919, if that was what was intended.
That the legislative intent was not to repeal the provisions for indeterminate sentence is further indicated by the fact that the statute of 1918 provides for indeterminate sentences to the State Home for Boys at Jamesburg and the State Home for Girls at Trenton, (see §§ 328, 333), and that the repealer of 1930 in nowise purports or attempts to repeal these provisions.
Further corroboration is afforded by the fact that the interpretation hereinbefore set forth is the interpretation which has universally been placed upon the repealing act, by bench and bar, ever since its passage. Cf. Tompkins v. Horton, 25 N.J. Eq. 284, at 294: Commonwealth Roofing Co. v. Riccio, *Page 348 81 N.J. Eq. 486, at 488, bottom, 87 Atl Rep. 114. The several courts in all of the counties have always continued to sentence female offenders of the specified ages to the Women's Reformatory and male offenders to the Rahway Reformatory, without specified terms, and the contention now put forward on this application has apparently never hitherto even been raised, — certainly not before any court whose conclusions are reported. (A statutory situation exactly similar to that presented in the instant case, exists in respect to the provisions for sentencing to the Rahway Reformatory.)
The writ will be discharged.