OGDEN CITY, RESPONDENT, v. THE BEAR LAKE & RIVER WATER-WORKS AND IRRIGATION CO. ET AL., APPELLANTS.

1. *Order Appointing a Receiver—Appealable.*
   An order appointing a receiver is a final judgment, within the meaning of section 9, art. 8, of the state constitution, and is appealable. In determining whether an order is appealable, its effects upon the rights of the parties will be considered, rather than the stage of the litigation at which it was made.

2. *Municipal Corporation—Powers.*

> The authority of a public corporation is limited to such powers as are expressly granted to it, and such as may become necessary to their exercise.

3. *Municipality—Property Devoted to Public Use—Transfer.*

> The provision of the charter of Ogden City, authorizing it to lease, convey, and dispose of property, real and personal, for its benefit, did not authorize it to lease or otherwise transfer its water-works system, or its water right used in supplying its inhabitants with water. A special provision is required to authorize the transfer of property so used.

4. *Property of Municipality—Not in Use—When Sold.*

> Personal or real property, not devoted to the use of the public, or needed therefor, may be sold or transferred by a municipality under a general provision of its charter authorizing it to sell property.

5. *Receiver—When will not be Appointed.*

> A receiver will not be appointed to take possession of property and charge of business in the hands of a defendant, unless the plaintiff's right is sufficiently probable, or when it is not probable that such property will be lost or will sustain injury during the suit, if the same is left in defendant's hands, or that the business will be mismanaged.

(No. 908,   Decided March 26, 1898.)

Appeal from the Second district court, Weber county. H. H. Rolapp, *Judge.*

Action by Ogden City against the Bear Lake & River Water-Works & Irrigation Company and others for injunction and equitable relief. From an order appointing a receiver on plaintiff's motion, defendants appeal. *Reversed.*

*Evans & Rogers, E. G. Vaughan,* and *A. G. Horn,* for appellants.

Where the question in a pending action is a dispute as to the title of the property, and both parties claiming title

thereto, and the defendant is in possession, equity will not appoint a receiver. *Bateman* v. *Superior Court*, 54 Cal. 285; *State* v. *Court*, 34 Pac. Rep. 609; Schlects, App. 60 Pa. St. 172; *Maples* v. *Scott*, 4 Ill. App. 268; *Thompson* v. *Sherard*, 35 Barb. 591; *Guernsay* v. *Powers*, 9 Hun 78; *Oofer* v. *Echerson*, 6 Ia. 502; *Chicago Oil Co.* v. *Petl. Co.*, 57 Pa. 83; Emerson and Wall App. 95 Pa. St. 258; *Talbot* v. *Scott*, 4 K. & J. 111; *Rawlins* v. *Henry*, 77 N. C. 469; High on Receivers 560-61-62-555-6, 573, 575, 578-592.

Equity will not interfere by a receiver *in limine*. High on Receivers, 14, 560, 573; 20 Enc. of Law 260; *Brown* v. *Chase* (Mich.), Walk 43; *Fogarty* v. *Bourke*, 2 Dr. & War. 580; *Gray* v. *Chaplain*, 2 Russ. 126; *Skinners* v. *Irish Society*, 1 Myl. & Cr. 161.

It is held that the mere fact that the corporation is insolvent does not furnish sufficient ground for the appointment of a receiver. *Land Co.* v. *Blevins*, 34 S. W. Rep. 828, 832; *French Bank case*, 53 Cal. 495; *Cattle Co.* v. *Brind*, 23 S. W. Rep. 819.

It is a well established principle, and one which we think cannot be controverted, that upon the application for the appointment of a receiver, the merits of the case should not be determined as was done in this case. *Seldon* v. *Weeks*, 2 Barb. 532; *Conro* v. *Gray*, 4 How. 166; *Higgins* v. *Bailey*, 7 Rob. 613.

That the act of plaintiff in authorizing the defendants to construct and maintain a water system within its limits was not *ultra vires*, see: *Ill. Trust & Savings Bank* v. *City of Arkansas City*, 76 Fed. Rep. 271; *Columbus Water Wks. Co.* v. *Mayor, etc.*, 28 Pac. Rep. 10.7; *Wood* v. *Water Wks. Co.*, 7 Pac. 233; *Burlington Water Wks. Co.* v. *City of Burlington*, 23 Pac. Rep. 1068; *Columbus Water Wks. Co.* v. *City of Columbus*, 26 Pac. Rep. 2; *Manley* v. *Emlen*, 27 Pac. Rep. 844; *Safety Ins. Wire Co.* v. *City of Baltimore*, 66 Fed. 140-

141; *San Francisco Gas Co.* v. *City of San Francisco*, 9 Cal. 453, 468-9; *Commonwealth* v. *City of Philadelphia*, 132 Pa. St. 288; *New Orleans Gas Light Co.* v. *City of New Orleans*, 42 La. 188-92; *Tacoma Hot. Co.* v. *Tacoma Light Co.*, 3 Wash. St. 316, 325; *Wagner* v. *City of Rock Island*, 146 Ill. 139; *City of Vincennes* v. *Citizens Gas Light Co.*, 132 Ind. 114, 126; *City of Indianapolis* v. *Indiana Gas Light Co.*, 66 Ind. 396, 403; *Read* v. *Atlantic City*, 49 N. J. L. 558, 562.

Where the statute authorizes action by the legislative body of a city and does not require such action to be taken by ordinance, it may be taken by a vote upon a motion or by the passage of a resolution. *Smalley* v. *Yates*, 13 Pac. Rep. 845; *Board* v. *DeKay*, 148 U. S. 591; *Couiter* v. *Board*, 54 N. J. L. 325; *City of Green Bay* v. *Brauns*, 50 Wis. 204; First Dill. Mun. Corp. (4th ed.) 307 and notes; *State* v. *Jersey City*, 27 N. J. L. 493; *Battle* v. *Passaic*, 45 N. J. L. 171; *Merchants Union Co.* v. *Chicago Ry. etc.*, 70 Iow. 105; *Sower* v. *City of Philadelphia*, 35 Pa. St. 231; *San Francisco Gas Co.* v. *City of San Francisco*, 6 Cal. 190; *First Mun.* v. *Cutting*, 4 La. 335; *City of Croffsville* v. *Bardon*, 130 Ind. 149.

*E. M. Allison, Jr., C. C. Richards, J. H. Macmillan,* and *C. C. Dey,* for respondent.

An order appointing a receiver is not a final judgment, from which an appeal will lie. *Irrigation Co.* v. *Canal Co.*, 14 Utah 155; *U. S.* v. *Church*, 5 Utah 394; *In re Kelsey*, 12 Utah 393; *Eastman* v. *Gurrey*, 14 Utah 169; *Watson* v. *Mayberry*, 15 Utah 265; *White* v. *Pease*, 15 Utah 170; *Nelson* v. *Southern Pacific*, 15 Utah 325; *Bear River Valley Orchard Co.* v. *Hanley*, 15 Utah 507; *Lodge* v. *Twell*, 135 U. S. 232; *Dainese* v. *Kendall*, 119 U. S. 53; *McGourkey* v. *Toledo etc., Co.*, 146 U. S. 284; *Eaton, etc., Co.* v. *Varnum*, 10 Ohio St. 622; *Mining Co.* v. *Dodds*, 6 Nev. 261; *Holden's Adm's.* v. *McMakin*, Par. Eg. Cas. 270; *Coates* v. *Cunningham*, 80

Ill. 467; *Hottenstein* v. *Conrad*, 5 Kan. 249; *Rolling Mill Co.* v. *R. R. Co.*, 31 Kan. 90; *Johnson* v. *Hanner*, 2 Lea. 8; *Duncan* v. *Campau*; 15 Mich. 415; *Brown* v. *Vandermeulen*, 41 Mich. 418; *Wilson* v. *Davis*, 1 Mont. 98; *French Bank case*, 53 Cal. 495; *French* v. *Alvarado*, 64 Cal. 529; *Lumber Co.* v. *Williams*, 71 Tex. 444; *Hannon* v. *Weil*, 69 Miss. 476; *Forgay* v. *Conrad*, 6 How. 201; *Am. Con. Co.* v. *Ry. Co.*, 148 U. S. 378-9.

That the act of the city was *ultra vires* see: *Huron Water Wks. Co.* v. *Huron*, 30 L. R. A. 848; 2 Dillon Mun. Corp. sec. 635; 1 Ibid, sec. 508; 1 Ibid, secs. 27, 110; Morawitz Priv. Corp. 1120 to 1129; *Merewether* v. *Garrett*, 102 U. S. 473; *New Orleans* v. *Morris*, 105 U. S. 600; 2 Beach on Pub. Corp., sec. 1327; 15 Am. & Eng Enc. of Law, pp. 1100-1103; *Water Wks. Co.* v. *Reed*, 50 N. J. L. 665; *Noel* v. *City of Antonio*, 33 S. W. 266, and cases cited; *Farmers' L. & T. Co.* v. *Galesburg*, 133 U. S. 156; *West Hartford* v. *Hartford W. Comns*, 44 Conn. 360; *Smith* v. *Nashville*, 88 Tenn. 464; *Roberts* v. *Louisville*, 92 Ky. 95.

And such property so dedicated to, and held for the public uses of, the inhabitants of Ogden City could not be subjected to the payment of the debts of the city. Its public character forbids such an appropriation. *Huron W. W. Co.* v. *Huron*, 30 L. R. A. 848, 855; *Merewether* v. *Garrett*, 102 U. S. 473; 2 Dillon Mun. Corp. sec. 576; *New Orleans* v. *Morris*, 105 U. S. 600; 15 Am. & Eng. Enc. Law 1068.

The city had no power to give away or sell its water works. *Huron W. W. Co.* v. *Huron*, 30 L. R. A. 848; *New Orleans* v. *Morris*, 105 U. S. 600; *R. R.*, etc., *Co.* v. *St. Louis*, 12 Fed. Cas. 1199; and note p. 1206; *Atty. General* v. *Detroit*, 71 Mich. 93; *McCullough* v. *Bd. of Edu.*, 51 Cal. 418; *City*, etc. v. *Itsell*, 80 Cal. 57; *Hoadley* v. *San Francisco*, 124 U. S. 639, 646.

The statutory provisions were mandatory and the power to sell, lease or otherwise dispose of, or to ratify a defective or irregular sale must have been exercised by ordinance in order to be valid. *Borough of Millford* v. *Water Co.*, 124 Pa. St. 6101; S. C. 17 Atl. Rep. 186; *Town of Durango* v. *Pennington*, 8 Colo. 257; S. C. 7 Pac. Rep. 15; *McCoy* v. *Briant*, 53 Cal. 249, 251; *Water Co.* v. *City of San Diego*, 59 Cal. 519, 522; *City* v. *Sears*, 2 Cal. 589; *Hunt* v. *Lambertville*, 45 N. J. L. 281; *Newman* v. *City of Emporia*, 32 Kan. 456; S. C. 4 Pac. Rep. 818; *McBrian* v. *Grand Rapids*, 56 Mich. 95; 1 Dillon Mun. Corp., sec. 309 and note; 2 Beach Pub. Corp., sec. 1328 and note; 1 Ibid, sec. 251; *Brown* v. *Mayor*, 63 N. Y. 239; *People* v. *Swift*, 31 Cal. 26; *Cross* v. *Morristown*, 18 N. J. Eq. 305; *New Orleans* v. *Clark*, 95 U. S. 644; *McCracken* v. *San Francisco*, 16 Cal. 591; Reese on *ultra vires*, secs. 189, 190, 194.

The appointment of the receiver was discretionary. And unless there has been an abuse of that discretion, the order appointing will not be reviewed on appeal. High Rec., secs. 7, 25, 65; Beach Rec., secs. 5, 7; 20 Enc. Law, 18-20, 107-108; *Rolfe* v. *Burnham*, 68 N. W. 980; Pomeroy Eq. Jur., Vol. 3, sec. 1331; *U. S.* v. *Church*, 5 Utah 361; *Ostrander* v. *Weber*, 114 N. Y. 95; *Winona* v. *Huff*, 11 Minn. 119; *Caldwell* v. *Gulton*, 31 Pa. St. 483; *Den* v. *Craig*, 15 N. J. L. 191; *Hancock* v. *McAvoy*, 151 Pa. St. 464; *Road Co.* v. *Smith* (N. Y.), 15 Barb. 358; *Parker* v. *Packing Co.*, 17 Or. 510; S. C. 21 Pac. Rep. 822; *Wood* v. *Turnpike Co* , 24 Cal. 488.

It appears from the record in this case that on July 16, 1884, the Ogden Water-Works Company assigned and conveyed to Ogden City, Utah, for the consideration of $74,-364.50, and for the further consideration that the latter assumed all the liabilities of the former, all the water rights, rights of way, ditches, dams, flumes, reservoirs,

water pipes, hydrants, and all instruments used for the purpose of diverting and distributing water owned and used by such company, and belonging to or connected with its water system; that the city of Ogden took possession of such water rights and system, and dedicated them to the use of its inhabitants, and repaired, improved, and extended the same, and established, by ordinance, water rates. It appears further that on August 6, 1889, a contract was entered into between Ogden City and one John R. Bothwell, by which the former purported to convey to the latter the right to furnish water to the city and its inhabitants, and the use of its streets for the purpose of laying water pipes for the water system described. The contract also provided: That upon the completion and operation of the system within the time designated, and in consideration of the benefits secured, the city would lease to him, for the full time that said Bothwell or assigns should furnish water through the system for municipal purposes, the water right owned by it, for an annual rent of one dollar. "That, within one year from the date hereof, he or his assigns will have in operation a complete distributive water system, furnishing the city and her inhabitants a plentiful and ample supply of water suitable for domestic purposes, continuously, from the mountains immediately east, and, as a part of said system, will have completed on said date a conduit, commencing in Ogden cañon, at a sufficient elevation, and made of size sufficient to convey the flow of Ogden river, and terminating at the mouth of the cañon, and from the terminus thereof a supply main or mains of sufficient diameter to convey an abundance of water for all purposes, as contemplated by this contract, to the intersection of Pierce avenue and Twenty-Fifth street, and from thence the distribution shall be by first-class iron pipes, upon the streets

and in the manner designated in the map hereto attached, marked 'Exhibit A,' and made a part hereof, and to be approved by the city council, and will extend the same as fast as adjoining property owners produce revenue equaling 8 per cent cost of the extensions." And it was provided that the grantee should furnish 200 gallons per day per capita, and the city was given the right at any time, at its option, to purchase the entire distributive system emanating from the mouth of the conduit, at the original cost of construction, "and may pay for the same in cash, or in six per cent bonds of the city, provided they be legal and valid. In case of the purchase of the distributive system, as set out in section 5, then the city shall have the right, at its option, to also purchase from the said John R. Bothwell or assigns all or such portion of the water of Ogden river as she shall elect, at a price to be established by arbitration." The contract contains other provisions, which we do not deem it necessary to refer to in this statement of the case. It appears further that the rights and obligations of Bothwell, under the contract, were transferred to the Bear Lake & River Water-Works & Irrigation Company, defendant, and were by it transferred to the Bear River Irrigation & Ogden Water-Works Company; that the latter company, before the commencement of this suit, expended more than $267,925.80 in substituting its new system for the old one, and in extending, improving, and repairing such water-works, and distributary system; and that it has received as much as $22,500 annually in rents for water distributed and delivered. After the corporate defendants had been in possession, under the contract mentioned, from October, 1890, the plaintiff filed its bill in chancery against the defendants on July 10, 1897, in which it set up the above facts, with others, and asked the court to find and decree the plaintiff

to be the owner of the entire water system, and to require the Bear River Irrigation & Ogden Water-Works Company to deliver the same to the plaintiff, and to enjoin them from collecting any water rents from persons using the water through the system, and for an accounting for rents collected. The decree was asked on the ground, as alleged, that the city of Ogden did not possess the power to convey its water works and water system to John R. Bothwell, or any of the defendants, or to lease its water rights; that the use of its water-works and water right had been dedicated to the public. A decree was also asked, in case the contract should be held valid, on the further ground that defendants' rights under the contract had been forfeited by a refusal or failure to comply with the contract set forth. The bill did not contain a prayer for the appointment of a receiver of the water-works, and the property or business thereof. But on January 4, 1898, about six months after commencing the action, the plaintiff entered a motion in the case for the appointment of a receiver of the entire water system and the business, with power to take possession thereof and collect water rates, and to transact all the business thereof. A receiver was asked for on the ground that the plaintiff had an interest in the water-works and its business, and that such interest would be in danger of being lost or greatly impaired unless a receiver should be appointed, and that the defendants were insolvent. Affidavits were read to the court, and other evidence was heard in support of the motion and against it, and insolvency of the defendants was denied. After hearing the motion upon the affidavits, and other evidence, the court granted an order or decree appointing a receiver of the entire water system and the business thereof, with directions to take possession; and the receiver having taken posses-

sion under the decree, the defendants took this appeal, which brings the decree before us for review.

ZANE, C. J. (having stated the case, delivered the opinion of the court):

The respondent insists that the order appointing the receiver is not a final judgment, within the meaning of section 9, art. 8, of the constitution of this state. That section declares that "from all final judgments of the district court there shall be a right of appeal to the supreme court." The Bear River Irrigation & Ogden Water-Works Company had been in the actual possession of the water system, and the business transferred to the receiver by the order, more than seven years before the order appointing the receiver and depriving it of its possession of the property and the control of the business was made. The order determined finally the rights of the parties to the possession of the property in dispute, and the control of the business, during the pendency of the suit; and the right to collect all demands due, and to pay all liabilities incurred, was also given to the receiver during that time. When the court shall finally determine the rights of the parties with respect to the property and business, and order them turned over to the one adjudged to be entitled, the order appointing the receiver will be recognized as binding. It will not be modified, added to, or changed. Before that time the receiver may collect and add to the fund, pay out a portion of it, and he will then deliver and transmit whatever remains to the person found to be entitled. The order, when made, was final as to the appointment of the receiver. No further action of the court was contemplated with respect to it. Errors, if any, in the order, can only be reviewed on an appeal from it. It would be idle to review such errors after the

16 UTAH—29

duties of the receiver shall have been terminated,—after the order shall have spent its force. Any injury to the party entitled to the benefit of the possession and the business during the litigation will have been sustained before that time, and errors, if any, in appointing the receiver, will have accomplished their effects. By it, important rights were taken from the defendant the Bear River Irrigation & Ogden Water-Works Company, for the injurious consequences of which, if erroneous, there can be no redress without appeal from the order. In determining whether the order is appealable, we must consider its effects upon the rights of the parties, rather than the stage of the litigation at which it was made. While some of the authorities bearing upon the question cannot be reconciled, we are disposed to follow those supporting an appeal in cases like this. They appear to be supported by the better reasons. *Barry* v. *Briggs*, 22 Mich. 200; *Brown* v. *Ring*, 77 Mich. 159; *Lewis* v. *Campau*, 14 Mich. 458.

The appellants insist that the order appointing the receiver, appealed from, is erroneous; that the court was not authorized, under the pleadings and the evidence, to make the order. They rely upon the contract of August 6, 1889, between the city of Ogden and John R. Bothwell, and the transfers by which it came to the Bear River Irrigation & Ogden Water-Works Company, and the resolutions of the city council, of October 4, 1890, purporting to turn over and transfer to the Bear Lake & River Water-Works Company the Ogden City water-works system. They insist that thereby the latter company obtained the title to the Ogden City water-works system, and the right to furnish water to the city and its inhabitants, and the use of its streets for water pipes, and a lease for the full time that Bothwell or his assigns should furnish water

through the water-works system for municipal purposes; while the respondent claims that the water-works system and the water, the right to which is in dispute, was dedicated to the use of the public, and that the city authorities could not transfer it to Bothwell, or to the defendants, or either or any of them, without the express authority of a legislative enactment, and that, no such authority being in existence, the transfer relied upon by the defendants was absolutely void. If the defendants are right in their contention, the plaintiff has no right to the water system or water right in dispute, or to the control of the business, and the appointment of the receiver must be held to be erroneous. On the contrary, if the plaintiff is right in its contention, or we can say from the pleadings and evidence upon which the receiver was appointed that the plaintiff is probably right in its contention, and that the property or proceeds of the business was in danger of being materially injured, or any considerable part of it was in danger of being lost if left in the hands of the defendant the Bear River Irrigation & Ogden Water-Works Company, during the pendency of this suit, we must hold that the appointment of the receiver was not erroneous.

As to the first proposition in the order we will consider them, was the city of Ogden authorized to enter into a contract transferring its rights to the waters and system in question to the defendants, or either of them? Ogden City was a public corporation, and its authority was limited to such powers as were expressly granted by statute, and such as might be necessary to those expressly given. Undoubtedly, water distributed to a city and its inhabitants is devoted to a public use, and the entire system, whether consisting of reservoirs, conduits, pipes, or other means used to accomplish the delivery, is also

dedicated to the same use. The charter of Ogden City contained a provision authorizing it to "purchase, receive, hold, sell, lease, convey and dispose of property real and personal for the benefit of the city." No authority is expressly or by necessary implication given to convey, transfer, or lease to a private corporation, or other person, property used by the public,—dedicated to a public use. The control and management of property dedicated to the use of the people of a city is given for their benefit, not for the individual benefit of the public authorities. A public corporation is not a legal entity or person, whose interests can be considered separate and apart from its people. It is but an instrumentality created and perpetuated for their benefit. Its officers, as such, are nothing more than agents of the public. They must act within the scope of their authority. Their acts outside are perfectly impotent, from a legal standpoint. Their authority and control of the property and rights of the corporation used by the people are not given them for the purpose of being transferred to private corporations, or any one else, to enable them in that way to deprive the public of its use; nor can the city authorities divest the city of 'ts rights to it, and in that way rid themselves of the management and control of it for the city and its inhabitants. They cannot deprive the public of the benefit of property rights or powers affected with a public use by conveying or leasing it to others, unless their charter specially authorizes it, though such other corporation or person may undertake to give the public the use of it for compensation deemed reasonable. Such officers are selected by the people, to whom they are responsible, and they may be removed and superseded by others. While the use of public property is controlled and managed by public officers, whatever compensation is received goes

into the public treasury, and, if the compensation exceeds the actual cost, the public gets the benefit of the surplus or net income. When property whose use is devoted to the public is conveyed or leased to private corporations, though a contract may require its use to be given to the public for a reasonable remuneration, the public, to a great extent, loses its control over it, and any net income realized goes into the hands and pockets of private parties. In fact, such parties cannot give the use of their property to the public for the actual cost of it, and the actual expense of the business, as in this case. They must have profits, and it is to the interest of such parties to make the profits or net income as large as public officials will consent to make it. The people usually get fleeced when the city places its water-works in the hands of private parties. Public-spirited men are not at all times free from the undue influence of self-interest. Their disposition to favor the public is not equal to their inclinations to favor themselves. Such are the leanings of human nature, even when engaged in public-spirited projects. A city sometimes has on hand personal and real property not devoted to the use of the public; fire engines, horses or other personal property may become unsuited to the use for which they were designed, and be replaced and cease to be used. Public buildings may become unfit for the public use, and for sufficient reasons the city may not wish to build on the same lot; and such buildings, and the lots upon which they stand may be no longer used by the public. The city from time to time may have other classes of property that has ceased to be used, or is not used by the public. All such property of a municipal corporation, not devoted to the public use, may be sold or leased under the general authority to sell or lease, as the public wel-

fare may demand. Such property may be converted into money or other things, and in that form devoted to the use of the public. But property devoted to a public use cannot be sold or leased without special statutory authority. It follows that the writing purporting to grant to John R. Bothwell the right of Ogden City to furnish water to it and its inhabitants, and to lease to him its water rights, as long as he or his assigns should furnish water to it, and the resolution of its city council purporting to turn over to the Bear Lake & River Water-Works Company the water-works system of the city, were absolutely void, because made without authority of law. *Huron Water Works Co.* v. *City of Huron* (S. D.), 62 N. W. 975; 5 Thomp. Corp. § ‡880; 5 Am. & Eng. Enc. Law, p. 1068.

It appears from the pleadings in the record that about seven years intervened after the corporate defendants took actual possession under the void grant and lease, before this suit was instituted, and that nearly all of the pipes and other parts of the water system delivered to the corporate defendants by the plaintiff had been replaced, and that the distributive system had been greatly added to and extended; that the Bear River Irrigation & Ogden Water-Works Company had expended more than $269,925.80 in replacing the old system, and in adding to and extending it; that the replacement of such new system at this time would cost that amount. While we are of the opinion that the attempted transfer of the old water-works system by the plaintiff, and the leasing of its water right, were invalid, and the city of Ogden must be held to be the owner and entitled to the possession and control of the remaining portion, the possession of which it transferred to the corporate defendants, and that it is the owner and entitled to the possession and control

of the water right, notwithstanding the lease to Bothwell and his assigns, we do not deem it necessary on this appeal to determine the rights and interests of the respective parties to and in so much of the present system constructed by the corporate defendants, or either of them. Such rights can be more satisfactorily determined in the light of all the evidence upon the final trial. The relative rights of the parties with respect to so much of the new system as replaced the old may be distinguished from their rights with respect to so much of the system as consists of additions to and extensions of the old. The right and interest of the plaintiff to and in that portion of the system which the Bear River Irrigation & Ogden Water-Works Company built during the time it was in possession and control is not sufficiently manifest and probable from the proof,—particularly their right and interest in and to so much of the plant and system consisting of additions and extensions. Nor was the danger of loss, removal, or material injury sufficiently established to authorize the court to take the possession of the entire waterworks system and business from the defendants, and place it in the hands of a receiver. The property involved consisted of a reservoir, conduits, and water pipes buried in the ground, and fire hydrants and other instrumentalities connected with them. The defendants are not likely to lose, remove, or materially injure these; and it does not appear from the evidence that business pertaining to the water-works has been neglected or mismanaged by the corporate defendants, or either of them. The order of the court below appointing Thomas D. Dee receiver is reversed, and the cause is remanded, with directions to order a return of the property to the Bear River Irrigation & Ogden Water-Works Company. Costs are awarded to the appellants.

BARTCH, J.:

I concur in the judgment of reversal, directing the property to be returned to the defendant company.

MINER, J. (concurring in part):

I concur in the opinion of the Chief Justice, in so far as it directs a reversal of the order appointing a receiver. This being an appeal from an order appointing a receiver, the questions as to the validity of the writing and contract between the city of Ogden and the Bear Lake & River Water-Works Company, and of the resolution of the city council purporting to turn over to the Bear Lake & River Water-Works Company the water-works system of the city of Ogden, are not properly before this court, upon this appeal, for determination. Upon the final hearing many questions not heretofore presented to, or passed upon by, the trial court, may arise; and until that time, in my opinion, a decision upon questions not necessary for the determination of the question at issue, or upon the merits of the case, should be withheld. At the time this court denied the application made in this case for a writ of *certiorari*, and permitted, without argument, an appeal to be taken from the order appointing a receiver, the case of U. S. v. Church of Jesus Christ of Latter-Day Saints, decided by the territorial supreme court, and reported in 5 Utah, 394, holding that an appeal would not lie from an order appointing a receiver, had not been called to the attention of this court. So far as the present case is concerned, the determination of that question is the law of this case. But whether an appeal will lie from an order appointing a receiver in all cases is a question upon which I have serious doubts, under the decisions of this court, and the authorities cited. I expressly refrain from assenting to the doctrine laid down in the opinion of the Chief Justice upon this subject.